**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | Case No. |
| | : | 3:21-CR-220 (VAB) |
| v. | : | |
| | : | |
| MAHESH PATEL, ROBERT HARVEY, | : | |
| HARPREET WASAN, STEVEN | : | |
| HOUGHTALING, TOM EDWARDS, and | : | |
| GARY PRUS, | : | |
| | : | March 9, 2023 |
| *Defendants.* | : | |
| | : | |

**DEFENDANT STEVEN HOUGHTALING'S**
**MEMORANDUM OF LAW IN OPPOSITION TO THE**
**UNITED STATES' MOTION IN LIMINE #4**
**TO EXCLUDE ADVICE OF COUNSEL AND PRIVILEGED COMMUNICATIONS**

## PRELIMINARY STATEMENT

Steve Houghtaling respectfully submits this memorandum of law in opposition to the government's Motion in Limine #4. (Dkt. 308 ("MIL #4"), Dkt. 308-1 ("MIL Mem. #4").) The government's motion seeks to preclude defendants from presenting evidence implying that "any Defendant or co-conspirator did or did not seek or receive the advice of legal counsel regarding the alleged crime or similar conduct." (MIL #4 at 1.) That sweeping request would bar from evidence critical documents that reflect communications between Mr. Houghtaling, Belcan's counsel, and other Belcan employees (the "Counsel Documents") as well as any documents containing even "mere references" to legal counsel. (MIL Mem. #4 at 9–10.) The government's request would present a fictionalized view of the facts in which no defendant even *talked* to a lawyer about the complex employment and hiring issues at play in this case. Not only would the government's narrative mislead the jury, but it would also bar Mr. Houghtaling from presenting documents that are nothing but complete versions of email strings the government has included on its exhibit list for trial, and exclude numerous relevant documents on the parties' exhibit lists, all of which are highly relevant under Rule 401 and not remotely unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.

The government bases its argument on the idea that the conspiracy charged here is a "general intent crime" that "cannot be defended on the grounds of advice of counsel or other 'good faith,'" and thus the Counsel Documents do "not make any fact relevant to this matter more or less probable." (MIL Mem. #4 at 1–2.) That argument, however, is entirely inapplicable here, and misstates the relevance of the Counsel Documents, which directly bear on several key elements in this case, including the existence of the alleged conspiracy and whether Mr. Houghtaling knowingly joined that conspiracy.

In this case, unlike in the bid rigging and price fixing cases on which the government relies, no poach agreements are not always *per se* illegal. This Court squarely and correctly held that "not all no poach agreements are market allocations subject to *per se* treatment and therefore, determining whether a no poach agreement is a market allocation is highly fact specific." (*See* Dkt. 257 ("MTD Order") at 21.) Thus, in the context of this case—in which the government is bound by this Court's prior rulings—the government is required to prove beyond a reasonable doubt that the defendants knowingly entered into an agreement with the specific purpose of allocating the market. (*Id.*)

The question of whether any proposed no poach agreement might be a market allocation is not intuitive, involving the application of law to fact, and a layperson would appropriately need the help of counsel to make that determination. The Counsel Documents the government seeks to exclude relate to communications between Mr. Houghtaling, Belcan's counsel, and others going to this "highly fact specific" issue, that is, whether there was, in fact, a market allocation agreement, as opposed to some other agreement or no agreement at all, and the documents are thus relevant to the critical issue of knowledge that separates innocent from guilty conduct. As set out below, courts regularly admit comparable evidence of knowledge in similar circumstances, regardless of whether a crime could be categorized as a "general intent" crime.

The government cites cases supporting the general idea that "it is no defense that the defendant did not know his conduct was illegal" (MIL Mem. #4 at 6), but that is not the issue here. Rather, the issue here is whether the government can prove beyond a reasonable doubt that the defendants knowingly entered into an agreement with the purpose of allocating the market, and the Counsel Documents bear directly on this point. Accordingly, the Counsel Documents fall squarely within Rule 401's definition of relevant evidence and should not be excluded under Rule 403.

Moreover, the previously redacted portions of the Counsel Documents that the defense seeks to introduce are admissible pursuant to Rule 106's "rule of completeness" and under case law permitting evidence of "consciousness of innocence" because they "in fairness ought to be considered at the same time" as the unredacted portions of those same documents that the government plans to introduce, as the previously redacted portions show that questions about the legality of Mr. Houghtaling's and Belcan's activities were addressed with counsel. Viewed in their entirety, the documents show that Mr. Houghtaling obtained guidance from counsel on these questions, and the jury should see that, or else it will be left with the false and misleading impression that Mr. Houghtaling did nothing about the concerns reflected in the government's proposed exhibits—or worse, that Mr. Houghtaling sought counsel but then ignored or contravened the advice entirely.

In addition, evidence of communications with Belcan's counsel are admissible because they are directly relevant to several key issues in this case, including the existence of the alleged conspiracy. As these documents reflect, with counsel's guidance, Mr. Houghtaling did not come to any meeting of the minds as alleged, and did not agree to any blanket no-hire agreement. ███

████████████████████████████████████████████████████████

████████████████████████████████ The government's overbroad request to preclude "[e]ven the implicit suggestion" (MIL Mem. #4 at 1) that Mr. Houghtaling or other defendants spoke to lawyers would bar relevant and admissible evidence central to that issue and other aspects of Mr. Houghtaling's defense.

For all of these reasons, the Court should deny the government's fourth motion in limine.

## **BACKGROUND**

The Indictment charges Mr. Houghtaling, a Senior Vice President at Belcan LLC, with entering into a conspiracy "to suppress competition by ***allocating employees*** in the aerospace industry

working on projects for [Pratt & Whitney]." (Ind. ¶¶ 13, 19 (emphasis added).) As this Court held, these allegations only state a *per se* offense if the government establishes that defendants agreed to allocate a market. Simply agreeing not to poach each other's employees is not enough. (MTD Order at 21 ("[N]ot all no poach agreements are market allocations subject to *per se* treatment and therefore, determining whether a no poach agreement is a market allocation is highly fact specific.").)

███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████ Mr. Houghtaling provided these unredacted documents to the government on March 3, 2023. These documents are attached here as Exhibits G-K.

███████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████
██ ██████████████████████████████████████

**ARGUMENT**

**I.    The Counsel Documents Are Relevant And Admissible Evidence Of Whether The Defendants Knowingly Agreed To Allocate A Market, And Are Not Unfairly Prejudicial**

The Counsel Documents are highly relevant because they bear on a key element that the government must prove beyond a reasonable doubt:  whether the defendants knowingly agreed to allocate a market.  As this Court held, "not all no poach agreements are market allocations subject to *per se* treatment," and "determining whether a no poach agreement is a market allocation is highly fact specific."  (MTD Order at 21.)[1]  As part of that "highly fact specific" inquiry, the Counsel Documents are admissible.

Consistent with this Court's decision, the government must prove at trial that each defendant knowingly entered into an agreement with the purpose of allocating the market.  As explained in *United States v. DaVita Inc.*, the only case to squarely address this issue previously, "the government will not merely need to show that the defendants entered the non-solicitation agreement and what the terms of the agreement were.  It will have to prove beyond a reasonable doubt that defendants entered into an agreement with the purpose of allocating the market."  *United States v. DaVita Inc.*, No. 1:21-cr-00229-RBJ, 2022 WL 266759, at *9 (D. Colo. Jan. 28, 2022).  *DaVita* is consistent with the general

---

[1] As this Court explained in making that determination, because "courts regularly uphold no hire and no solicitation agreements under the rule of reason analysis," it cannot "predict with confidence that" no hire or no solicitation agreements "would be invalidated in all or almost all instances under the rule of reason," and no hire and no solicitation agreements are not categorically "plainly anticompetitive and lack[ing] any redeeming virtue."  (MTD Order at 17 (citations omitted).)

rule in Sherman Act cases that the government must prove that the defendants intended to commit the specific prohibited act. *See United States v. Aiyer*, 33 F.4th 97, 125 (2d Cir. 2022) ("[A]s to intent, the government was required to prove . . . that Aiyer intentionally engaged in a conspiracy to fix prices and/or rig bids."). Even the government here appears to agree that it must prove that "the defendant intended to commit the prohibited act." (MIL Mem. #4 at 5-6.)

In order to prove that the defendants intended to commit the prohibited act—and knowingly agreed to allocate the market—the government will have to show not just that the alleged no-poach agreement existed, but that the defendants fell on the wrong side of the line separating an unlawful market allocation agreement from a potentially lawful agreement, and the Counsel Documents are admissible evidence on this issue. In some cases—such as the bank robbery cases on which the government relies—the line separating the prohibited act from an innocent act is straightforward, such that evidence comparable to the Counsel Documents may not be admissible. That is because the conduct prohibited by the bank robbery statute—taking a "thing of value" by "force and violence, or by intimidation"—falls "outside the realm of the 'otherwise innocent.'" *Carter v. United States*, 530 U.S. 255, 269–70 (2000).

By contrast, no-poach agreements are not categorically wrongful. (MTD Order at 16-17.) Accordingly, as in *DaVita*, the government must prove not only that defendants knowingly entered into a no-poach agreement, but also that defendants knowingly agreed to allocate a market, that is "that the alleged agreements and understandings sought to end meaningful competition for . . . the affected employees." Final Jury Instructions at 20, *United States v. DaVita Inc. et al*, No. 1:21-cr-00229-RBJ, Dkt. 254 (D. Colo. Apr. 13, 2022). *See also Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) (agreement not to poach agents that "do not comprise the entire set of suppliers of their services . . . does not allocate the market for agents to any meaningful extent"). Because they are not

always *per se* illegal, no-poach agreements are "often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 (1978). When corporate employees encounter such issues, lawyers can assist them to "find out how to obey the law," because "compliance with the law in this area is hardly an instinctive matter." *Upjohn Co. v. United States*, 449 U.S. 383, 392–93 (1981) (citing *U.S. Gypsum Co.*, 438 U.S. at 440–41)).

In cases involving conduct that is categorically *per se* illegal, such as price-fixing, awareness of the underlying conduct alone may be sufficient to demonstrate knowledge that one is engaging in a *per se* offense. *Cf. McFadden v. United States*, 576 U.S. 186, 198 (2015) (Roberts, C.J., concurring) ("In cases involving well-known drugs such as heroin, a defendant's knowledge of the identity of the substance can be compelling evidence that he knows the substance is controlled. But that is not necessarily true for lesser known drugs."). Here, however, determining whether the underlying conduct qualifies as *per se* illegal requires "highly fact specific" analysis (MTD Order at 21) of a thorny and unsettled legal issue, one that has already produced reams of briefing in this Court and others. Given the complex and evolving legal backdrop, "the layman…has no real choice but to rely on counsel." *Howard v. SEC*, 376 F.3d 1136, 1148 n.20 (D.C. Cir. 2004) (citation omitted).

The Counsel Documents are thus highly relevant to Mr. Houghtaling's knowledge of whether alleged hiring restrictions constitute a market allocation. ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████ *See, e.g.*, *Bogan*, 166 F.3d at 515 (agreement not to

poach agents that "do not comprise the entire set of suppliers of their services . . . does not allocate the

market for agents to any meaningful extent").

Against this backdrop, the arguments set forth in the government's motion seeking to exclude

the Counsel Documents fall flat, as they misstate both what the government must prove and the

anticipated defense.  As to the government's burden, the government wrongly states that it need only

show that each defendant was "aware that he is joining and facilitating a *no-poach* agreement."  (MIL

Mem. #4 at 15 (emphasis added).)  But even if the government proves that fact, merely joining a no-

poach agreement "is not what makes the conduct 'wrongful.'"  *Elonis v. United States*, 575 U.S. 723,

737 (2015).  Rather, as this Court held, the government must prove that the defendants knowingly

joined a market allocation agreement.  The government thus misstates the very element for which the

Counsel Documents provide relevant and admissible evidence.

More importantly, the government misunderstands the relevance of the Counsel Documents

and suggests that they would only be offered to show that the defendants believed in good faith that

what they were doing was not unlawful.  (MIL Mem. #4 at 8.)  But the Counsel Documents would be

offered specifically to show how Mr. Houghtaling and others were seeking to navigate the line that

separates having no agreement at all (or having at most a permissible no-poach agreement) from an

impermissible market allocation agreement—and did not knowingly enter a market allocation

agreement—rather than as generalized evidence of good faith.

Where the government must prove that the defendant knowingly committed the charged

conduct—including in circumstances where the charged conduct involves knowledge of a

circumstance that is "hardly… instinctive" as in this case—courts regularly allow evidence bearing on

knowledge regardless of whether a crime could be categorized as a "general intent" crime.[2] *See*

*United States v. Balde*, 943 F.3d 73, 97 (2d Cir. 2019) (fact that resolving defendant's immigration

status "required multiple hearings before the district court in which an able and experienced judge

found the questions difficult to resolve" was relevant to whether defendant knowingly possessed

firearms while being an alien unlawfully in the United States); *United States v. Perez-Perez,* 992 F.3d

970, 975 (10th Cir. 2021) (evidence that defendant was unfamiliar with the complexities of

immigration law relevant to whether defendant knowingly possessed firearm while being an alien

unlawfully in the United States); *United States v. Jawher*, 950 F.3d 576, 580 (8th Cir. 2020) (evidence

of defendant's "regular contact with immigration authorities," and "long marriage to a United States

citizen" relevant to contest knowledge of prohibited immigration status); *United States v. Lilley*, No.

15-6415, 2017 WL 7048806, at *4 (6th Cir. Jul. 26, 2017) ("[A]s this court recently clarified, evidence

of diminished capacity is admissible in general intent prosecutions . . . where the diminished capacity

relates to what would be a general intent element, i.e., knowledge.") (citing *United States v. Odeh*, 815

F.3d 968, 978–79 (6th Cir. 2016)); *Howard*, 376 F.3d at 1148 (law firm's close involvement with

disputed transactions "constituted powerful evidence" of defendant's lack of knowledge that

transactions raised red flags); *cf. United States v. Golitschek*, 808 F.2d 195, 202–03 (2d Cir. 1986)

---

[2] The government's cited cases either involve no intent-based defense whatsoever, *United States v. McKesson & Robbins, Inc.* 351 U.S. 305, 309 (1956) (question before the court a "narrow one of statutory interpretation"); *United States v. Nippon Paper Indus.*, 109 F.3d 1, 7 (1st Cir. 1997) (rejecting defendant's claims based on presumption against extraterritoriality), or simply hold that in *per se* Sherman Act cases, defendants cannot use anticompetitive ends to achieve a "greater good." *United States v. Topco Assocs.*, 405 U.S. 596, 610 (1972) (rejecting argument that "Topco was doing a greater good by fostering competition between members and other large supermarket chains"); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 227–28 (1940) (rejecting argument that price-fixing scheme could be used to promote beneficial New Deal policies). None of those cases address the defense that Mr. Houghtaling intends to raise here.

(while "ignorance of the law is no excuse," that maxim does not apply to "legal requirements that must be known in order to have committed the offense."); *Liparota v. United States*, 471 U.S. 419, 433 (1985) (for improper use of food stamps offense, government must prove knowledge of how food stamp regulations apply).

Left without binding authority specifically applicable to market allocations, the government turns to jury instructions (MIL Mem. #4 at 8) in traditional *per se* cases. But in the *per se* prosecutions the government cites, the defendant's only apparent basis for a good-faith belief that their conduct was not unlawful is that they did not believe their conduct was anticompetitive.[3] *See, e.g.*, *United States v. Aiyer*, 470 F. Supp. 3d 383, 413–15 (S.D.N.Y. 2020) (rejecting defendant's argument that he should have been allowed to introduce "procompetitive justifications" and "evidence of the lack of anticompetitive effects"). When a belief that one's conduct was not anticompetitive is the *only* basis for a defendant's asserted good faith, it may be accurate that "belie[f] in good faith that what was being done was not unlawful is not a defense." Trial Tr., *United States v. Aiyer*, 18-cr-00333-JGK, Dkt. 180 (S.D.N.Y. Nov. 20, 2019), at 2145. But Mr. Houghtaling does not intend to use the Counsel Documents to demonstrate that he believed the alleged no-poach agreement was procompetitive. Rather, the Counsel Documents directly bear on whether Mr. Houghtaling knowingly and intentionally joined an agreement to allocate a market, which is an element the government must prove. *Aiyer*, 33 F.4th at 125 ("[A]s to intent, the government was required to prove . . . that Aiyer intentionally engaged in a conspiracy to fix prices and/or rig bids."). Precluding Mr. Houghtaling

---

[3] Each case cited by the government involves either price-fixing or bid-rigging—not market allocation. *Aiyer*, 33 F.4th at 105 (price-fixing and bid-rigging); *United States v. Usher*, No. 17 Cr. 19(RMB), 2018 WL 2424555, at *1 (S.D.N.Y. May 4, 2018) (price-fixing and bid-rigging); *United States v. Lischewski*, 860 F. App'x 512, 514 (9th Cir. 2021) (price-fixing); *United States v. AU Optronics Corp.*, No. 09–cr–0110 SI, 2012 WL 2120452, at *1 (N.D. Cal. Jun. 11, 2012) (price-fixing); *United States v. Romer*, 148 F.3d 359, 363 (4th Cir. 1998) (bid-rigging).

from presenting evidence on this key issue would violate his fundamental right to present a complete defense. *See Clark v. Arizona*, 548 U.S. 735, 769 (2006) (defendant has a "right as a matter of simple due process to present evidence favorable to himself on an element that must be proven to convict him").

Because the Counsel Documents bear on whether Mr. Houghtaling knowingly joined a market allocation conspiracy, their admission would also not be unfairly prejudicial to the government. In each of the cases cited by the government in support of the argument that the government would be prejudiced unfairly, evidence suggesting that a defendant relied on an attorney was deemed unfairly prejudicial when the defendant did not disclose to the jury the advice the attorneys gave. *SEC v. Lec Securities Corp.*, 17cv1789 (DLC), 2019 WL 5703944, at *3 (S.D.N.Y. Nov. 5, 2019) (references to counsel inadmissible because defendants "den[ied] access to the very advice that formed the supposed good faith belief that the conduct was legal"); *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) (defendant could not admit evidence related to legal advice for different patents when it refused to disclose advice given for the disputed patent); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15cv21, 2017 WL 2605977, at *5 (E.D. Va. Jun. 5, 2017) (where defendants refused to "disclos[e] the substance" of communications with counsel, it would be unfairly prejudicial to admit "evidence that their [employees] consulted counsel"); *SEC v. Kokesh*, No. 09-cv-1021 SMV/LAM, 2014 WL 11516545, at *3 (D.N.M. Jul. 21, 2014) (clarifying that the court would not "forever exclud[e] the disputed evidence," but would "reconsider" the order if defendant could establish an advice of counsel defense). Because Mr. Houghtaling seeks to admit the Counsel Documents in their entirety, these precedents are irrelevant, and the government will not suffer unfair prejudice.

## II.     The Counsel Documents Are Admissible Pursuant To The Rule Of Completeness And As Evidence Of Consciousness Of Innocence

In addition to being relevant and admissible on the issue of whether the defendants knowingly agreed to allocate a market, the Counsel Documents are also admissible pursuant to the rule of completeness under Rule 106 in order to prevent the government from presenting the jury with a misleading narrative through redacted documents that tell just half the story.

Rule 106 provides, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—*or any other writing or recorded statement*—that in fairness ought to be considered at the same time."  Fed. R. Evid. 106. Pursuant to Rule 106, parties must "be allowed to prevent omissions that render matters in evidence misleading."  *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 111 (2d Cir. 2012).  An "omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion."  *United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019) (quotation marks omitted).

The redacted versions of the Counsel Documents are incomplete and tell the jury only half the story.  The government proposes that the Court permit it to present evidence of the defendants' "suspicions about whether [the charged] activity is legal," but withhold from the jury any "suggestions" that any defendant acted "to 'clear' his conduct with a lawyer."  (MIL Mem. # 4 at 1, 14.)  According to the government, discussions regarding the legality of the charged activity reflect on a defendant's "consciousness of guilt" that he is "aware that he is joining and facilitating a no-poach agreement."  (*Id*. at 14–15.)

Moreover, to the extent the government presents evidence ███████████████████████
████████████████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████ *See*

*United States v. Gotti*, 457 F. Supp. 2d 395, 399 (S.D.N.Y. 2006) (Fed R. Evid 106 "does not allow the

Government to cherry pick the statements it wants to admit … and create a skewed picture of the

facts"); *United States v. Baird*, 29 F.3d 647, 653–54 (D.C. Cir. 1994) (evidence that defendant had

sought advice from counsel was admissible despite the fact that the crime at issue "contained no

scienter requirement" in order to rebut government's prejudicial evidence that defendant deliberately

disregarded the legality of the charged conduct).

The Counsel Documents are also admissible pursuant to the separate but related doctrine

under which evidence of a defendant's "consciousness of innocence" is admissible. *See United States*

*v. Biaggi*, 909 F.2d 662, 692 (2d Cir. 1990) (reversing defendant's conviction where court had

excluded "evidence of a defendant's innocent state of mind" and emphasizing that "[t]he unfairness of

preventing his presentation of evidence of his consciousness of innocence was exacerbated when the

Government presented evidence of his consciousness of guilt"). The government should not be

allowed, under this case law, to admit evidence the government believes shows "consciousness of

guilt," while using redactions to shield from the jury evidence that demonstrates consciousness of

innocence.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ As the government

foreshadows in its motion *in limine*, it intends to use such communications to suggest that

Mr. Houghtaling must have harbored "suspicions about whether [the charged] activity is legal." (MIL Mem. #4 at 14.)

Such a suggestion would be highly prejudicial and utterly misleading unless Mr. Houghtaling is given the opportunity to present the full context of those communications to the jury, thus "plac[ing]" ████████████████ emails "in context" and "avoid[ing] misleading the trier of fact." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) (citation omitted). ████████████



████████████ Mr. Houghtaling would be unfairly prejudiced—and Rule 106's completeness

requirement violated—should the government be allowed to present its incomplete narrative to the jury without allowing Mr. Houghtaling to present the Counsel Documents.

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██ ████████████████████████████ ████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ )

 At the jury trial in this matter, the government should not be permitted to "cherry pick" its facts and introduce prejudicial evidence while precluding Mr. Houghtaling from an opportunity to rebut that prejudice by presenting the complete and unredacted story. *Gotti*, 457 F. Supp. 2d at 399. Both Rule 106 and the "consciousness of innocence" case law require that the unredacted Counsel Documents be admitted.

---

[4] To avoid too much volume, we have not attached grand jury transcripts to this brief but are happy to make them available to the Court.

### III. The Court Should Deny The Government's Motion To Exclude Evidence Containing An "Implicit Suggestion" That Defendants Communicated with Counsel As Overbroad

The government not only seeks to exclude evidence that Mr. Houghtaling relied on the advice of counsel, but also asserts that *no* defendant should be allowed to use any evidence that contains "[e]ven the implicit suggestion that a Defendant acted in good faith to 'clear' his conduct with a lawyer." (MIL Mem. #4 at 1.) This request would bar substantial evidence going to key issues at trial.[5] As discussed further below, under Rule 403, the relevance of these materials significantly outweighs any prejudice to the government that may result from the jury's perception that defendants may have consulted with counsel.



---

[5] In fact, the government's sweeping request to bar all evidence containing "[e]ven the implicit suggestion" of counsel's involvement (MIL Mem. #4 at 1) would preclude at least thirty documents on defendants' and the government's exhibit list reflecting the central role that counsel played in hiring and employment matters at issue in this case. Several pertinent examples have been attached here. *See* GX-338, attached hereto as Exhibit N, BELCAN00010310, attached hereto as Exhibit O, BELCAN00010961, attached hereto as Exhibit P. Numerous other documents on the defendants' and government's exhibit list would also fall under the government's broad prohibition. *See e.g.*, GX-325, GX-335, UTC-DOJ00886481, UTC-DOJ00886543, BELCAN00000464, BELCAN00000465, BELCAN00000476, BELCAN00002381, BELCAN00002382, BELCAN00002714, BELCAN00002891, BELCAN00002892, BELCAN00002894, BELCAN00006194, BELCAN00006195, BELCAN00008387, BELCAN00010310, BELCAN00010959, BELCAN00010960, BELCAN00010961, BELCAN00018427, BELCAN00025168, BELCAN00025238, BELCAN00025240, BELCAN00025250, BELCAN00025603, BELCAN00025917.

████████████████████████████████████████████████████████████ This
evidence directly reflects that Mr. Houghtaling did *not* agree to a blanket no-hire agreement with
Belcan's competitors and rebuts the very existence of the alleged conspiracy.

 *Second*, Mr. Houghtaling intends to present evidence reflecting that in many instances
competitors' employees were not hired because of non-compete agreements with their former
employers and not due to an alleged no-hire agreement. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ The government's motion, however, would preclude Mr. Houghtaling
from offering this critical piece of evidence.

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ These emails are necessary for Mr. Houghtaling to explain the reasons for certain of Belcan's hiring practices and refute the government's allegation that competitors' employees were not hired because of an agreement to allocate the market through a no-poach agreement.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████. *See United States v. Nu-Phonics, Inc.*, 433 F. Supp. 1006, 1014 (E.D. Mich. 1977) (finding that defendants in price-fixing prosecution under Section 1 "must be given the opportunity to present all relevant evidence in support of any defense which is open to them").

████████████████████████████████████████████████████

██████████████████████████████████ and rebut the government's allegation that Mr. Houghtaling "had substantial responsibilities regarding . . . hiring and recruiting at [his] respective company[y]." (Ind. ¶ 16.) ████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

[REDACTED]

*Finally*, the Counsel Documents are also relevant and admissible to refute the government's allegation that defendants "took steps to conceal the existence and operation of the conspiracy." (Ind. ¶ 29.) [REDACTED]

[REDACTED]

Excluding the Counsel Documents, which go to multiple critical issues in this case, would strip Mr. Houghtaling of his fundamental right to present evidence in his defense and would be contrary to Rule 403.

Finally, the probative value of these communications outweighs any unfair prejudice to the government and any risk of delay. As highlighted above, the only potential unfair "prejudice" identified by the government is that admitting communications with counsel may suggest to the jury that counsel "approved" or "blessed" the charged conduct. (MIL Mem. #4 at 10–11.) But that concern only arises where a defendant seeks to present an advice of counsel defense "without any mention of the substance of the consultation or ultimate advice." *Id*. [REDACTED]

[REDACTED]

As for undue delay, Mr. Houghtaling has now identified the Counsel Documents—a mere five documents—to the government and the Court weeks before trial. Any disputes over these communications can be resolved in advance of the trial, avoiding any trial disruption. Notably,

pursuant to the Sixth and Fourteenth Amendments, evidence that is sufficiently material to the defense of a criminal prosecution may be admitted even over a claim of attorney-client privilege. *See, e.g.*, *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1145 (D. Mont. 2006); *Morales v. Portuondo*, 154 F. Supp. 2d 706, 730 (S.D.N.Y. 2001) (Chin, J.). Where courts have recognized that a defendant's right to present a complete defense may override the privilege itself, it would be perverse indeed to conclude that a mere *potential* dispute over privilege issues would justify excluding the evidence entirely. In any event, any disruption would be far outweighed by the probative value of these communications, which directly bear on Mr. Houghtaling's guilt or innocence in this case.

## **CONCLUSION**

The government's fourth motion *in limine* should be denied.

Respectfully submitted,

*/s/ Richard F. Albert*
RICHARD F. ALBERT (pro hac vice)
PENINA C. MOISA (pro hac vice)
JORJA KNAUER (pro hac vice)
A. DENNIS DILLON (pro hac vice)
Morvillo, Abramowitz, Grand, Iason & Anello P.C.
565 Fifth Avenue
New York, NY 10017
T: (212) 880-9560
F: (212) 856-9494
Email: ralbert@maglaw.com

PATRICK A. KLINGMAN (ct17813)
Klingman Law, LLC
280 Trumbull Street, 21st Floor
Hartford, CT 06013
T: (860) 256-6120
Email: pak@klingmanlaw.com

*Counsel for Steven Houghtaling*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/   Penina C. Moisa*
Penina C. Moisa (pro hac vice)
Morvillo Abramowitz Grand Iason & Anello  P.C.
565 Fifth Avenue
New York, NY 10017